UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROBERT JAMES SPEARS,

                Plaintiff,

v.                                        Case No. 3:19-cv-1072-BJD-JBT

SGT. JORDAN, et al.,

                Defendants.

_____

## ORDER

### I. Status

Plaintiff, Robert James Spears, an inmate of the Florida Department of Corrections (FDOC), is proceeding pro se on a complaint for the violation of civil rights under 42 U.S.C. § 1983 (Doc. 1; Compl.). Plaintiff sues five officers for an incident that occurred at Hamilton Correctional Institution (HCI) on March 24, 2019. See Compl. at 3-5. In his complaint, which is verified under penalty of perjury, Plaintiff alleges two officers (Defendants Jordan and Tolbert) slammed him to the ground and then kicked and punched him. Id. at 5. Plaintiff contends he was handcuffed at the time. Id. Two other officers (Defendants Aretino and Morgan) allegedly watched the incident but did not intervene. Id. at 5-6. Plaintiff alleges Defendant Smith "had knowledge" of the use of force and falsified reports to cover it up. Id. Plaintiff claims to have

sustained injuries to his face, arms, and legs. <u>Id.</u> at 6. He seeks compensatory and punitive damages. <u>Id.</u>

Before the Court is Defendants' motion for partial summary judgment (Doc. 41; Motion). In support of their motion, Defendants offer a disciplinary report (Doc. 41-1; Def. Ex. A), a use-of-force report (Doc. 41-2; Def. Ex. B), the declaration of Defendant Smith (Doc. 41-3; Def. Ex. C), and medical records (Docs. 41-4 through 41-6; Def. Exs. D-F). Plaintiff filed multiple responses (Docs. 43, 44, 50, 51, 53, 55).[1]

## II. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant. <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742 (11th Cir. 1996) (quoting <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient

---

[1] Plaintiff did not seek leave to file multiple responses to Defendants' motion. Additionally, the Court struck document 51 (a declaration) for Plaintiff's failure to sign it. Regardless, Plaintiff repeats the same points in most of his filings. The Court summarizes Plaintiff's position later in this Order, citing relevant filings by document number.

to defeat a motion for summary judgment." <u>Kesinger ex rel. Estate of Kesinger</u> <u>v. Herrington</u>, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing <u>Anderson v. Liberty</u> <u>Lobby, Inc.</u>, 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. <u>See</u> <u>Clark v. Coats &</u> <u>Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

When the moving party has discharged its burden, the non-moving party must point to evidence in the record to demonstrate a genuine dispute of material fact. <u>Id.</u> Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson</u>, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing [the motion]." <u>Haves v. City of Miami</u>,

52 F.3d 918, 921 (11th Cir. 1995) (citing <u>Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro</u>, 38 F.3d 1571, 1578 (11th Cir. 1994)).

## III. Analysis

Defendant Smith invokes qualified immunity, arguing Plaintiff alleges no facts showing his personal involvement in the alleged use-of-force incident. <u>See</u> Motion at 14-15. Jointly, Defendants argue Plaintiff suffered only <u>de minimis</u> injuries and, therefore, is not entitled to recover compensatory or punitive damages should he prevail. <u>Id.</u> at 10, 13-14.

Before addressing the issues of qualified immunity and damages, the Court notes Defendants also contend Plaintiff fails to state plausible claims for conspiracy and the denial of due process. <u>Id.</u> at 8-10. The Court does not interpret Plaintiff's complaint to raise such claims. He alleges Defendant Smith was complicit in covering up the extent of force used against him on March 24, 2019, by falsifying reports after the fact, presumably to demonstrate Defendant Smith's personal involvement.[2] <u>See</u> Compl. at 6. And Plaintiff does not reference disciplinary charges at all. <u>Id.</u>

---

[2] To the extent Plaintiff intends to state a claim for conspiracy under § 1983, he has failed to do so. Plaintiff at most implies the existence of a conspiracy but offers no supporting facts. "[T]he linchpin for conspiracy is agreement, which presupposes communication." <u>Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., Fla.</u>, 956 F.2d 1112, 1122 (11th Cir. 1992). As with any claim for the violation of a constitutional right, a conspiracy claim under § 1983 must be based on more than vague and conclusory accusations. <u>Allen v. Sec'y, Fla. Dep't of Corr.</u>, 578 F. App'x 836, 840 (11th

4

## A. Defendant Smith: Qualified Immunity

Defendant Smith invokes qualified immunity, arguing Plaintiff alleges no facts showing he violated Plaintiff's constitutional rights but rather premises his claim on a theory of <u>respondeat</u> <u>superior</u>. <u>See</u> Motion at 14-15.

Prison officials sued in their individual capacities are "entitled to qualified immunity for [their] discretionary actions unless [they] violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Black v. Wigington</u>, 811 F.3d 1259, 1266 (11th Cir. 2016) (quoting <u>Case v. Eslinger</u>, 555 F.3d 1317, 1325 (11th Cir. 2009)). Qualified immunity allows government employees to exercise their official duties without fear of facing personal liability. <u>Alcocer v. Mills</u>, 906 F.3d 944, 951 (11th Cir. 2018). The doctrine protects all but the plainly incompetent or those who knowingly violate an inmate's constitutional rights. <u>Id.</u> In other words, even if a prison official makes a decision that is later found to be constitutionally deficient, the official is entitled to qualified immunity if the decision was based on a reasonable misapprehension of the law governing the circumstances. <u>Taylor v. Riojas</u>, 141 S. Ct. 52, 53 (2020) (citing <u>Brosseau v. Haugen</u>, 543 U.S. 194, 198 (2004)).

---

Cir. 2014) (citing <u>Twombly</u>, 550 U.S. at 555). "It is not enough to simply aver in the complaint that a conspiracy existed." <u>Id.</u>

Upon invoking qualified immunity, a defendant bears the initial burden to demonstrate he was performing discretionary duties at the relevant times. <u>Id.</u> Plaintiff does not dispute that Defendant Smith was acting within the scope of his discretionary duties when the incident occurred. As such, the burden shifts to Plaintiff, who must point to facts that, accepted as true, demonstrate Defendant Smith violated a constitutional right that was clearly established at the time. <u>Id.</u> That, Plaintiff cannot do.

"It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1360 (11th Cir. 2003), <u>abrogated in part on other grounds by</u> <u>Randall v. Scott</u>, 610 F.3d 701 (11th Cir. 2010). Supervisory liability arises only "when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." <u>Mathews v. Crosby</u>, 480 F.3d 1265, 1270 (11th Cir. 2007) (internal quotation marks and citation omitted).

> The necessary causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." Alternatively, the causal connection may be established when a supervisor's "custom or policy ...

> result[s] in deliberate indifference to constitutional
> rights" or when facts support "an inference that the
> supervisor directed the subordinates to act unlawfully
> or knew that the subordinates would act unlawfully
> and failed to stop them from doing so."

Cottone, 326 F.3d at 1360 (internal citations omitted).

When a claim against a supervisor is premised on a supervisor's knowledge of prior constitutional deprivations, the plaintiff must show those prior deprivations were "obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990).

In his declaration, Defendant Smith avers he "was made aware of what occurred after the use of force as it was a spontaneous use of force." See Def. Ex. C ¶ 5. According to the force report, Defendant Jordan had to use force because Plaintiff became "combative and aggressive . . . while being escorted to confinement." See Def. Ex. B at 1. Defendant Johnson "grasped [Plaintiff's] upper torso with both hands and forced him chest first to the ground." Id. Plaintiff began flailing his body and yelling obscenities, so Defendant Jordan administrated chemical agents. Id.

Thereafter, Defendant Smith "arrived on scene with the use of force camera." See Def. Ex. C ¶ 6. The force report confirms Defendant Smith was the officer in charge and provided the lead-in statement for the handheld

camera, which was operated by another officer. <u>See</u> Def. Ex. B at 1. According to the force report, the camera started recording events at 5:41 p.m., and the force incident occurred at 5:36 p.m. <u>Id.</u>

Plaintiff points to no evidence showing Defendant Smith personally participated in a constitutional violation, directed other officers to violate his constitutional rights, or was aware of prior deprivations that were "obvious, flagrant, rampant and of continued duration." <u>Brown</u>, 906 F.2d at 671. In response to the motion, Plaintiff emphasizes that Defendant Smith was the officer in charge at the time. <u>See</u> Doc. 43 at 2, 9. Thus, it appears he proceeds against Defendant Smith solely based on Defendant Smith's status as a supervisor, which is insufficient to establish liability under § 1983. Plaintiff also alleges Defendant Smith covered up the officers' conduct. <u>See</u> Compl. at 6; Doc. 50 at 4, 7, 8; Doc. 43 at 2. While unclear, it appears Plaintiff accuses Defendant Smith of routinely covering up use-of-force incidents, perpetuating officer misconduct. <u>See</u> Doc. 43 at 3. These allegations, accepted as true, would establish Defendant Smith's personal participation in a constitutional violation.

However, on summary judgment, a plaintiff may not rely on the unsubstantiated allegations in his complaint. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986) ("Rule 56(e) permits a proper summary judgment motion

to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves."). "[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005). The Court previously advised Plaintiff that a party opposing a motion for summary judgment "may not depend upon mere allegations in his pleadings," but rather must respond with evidence showing a genuine issue of material fact in dispute. See Order (Doc. 42).

Despite having filed multiple responses to Defendants' motion for summary judgment, Plaintiff offers no evidence showing Defendant Smith knew Defendants Jordan and Tolbert used more force than necessary or colluded with those officers to fabricate the force report.[3] The record indisputably shows Defendant Smith was not present when force was used, and Plaintiff points to no evidence showing Defendant Smith learned the officers did anything other than what Defendant Jordan represented in the force report. Plaintiff also offers no evidence showing Defendant Smith routinely colluded with officers to fabricate force reports to conceal officers' wrongdoing. Plaintiff's vague, speculative assertions are insufficient to

---

[3] The only evidence Plaintiff offers in response to the motion are his medical records. See Doc. 44-1.

overcome Defendant Smith's qualified immunity defense on summary judgment.

For these reasons, Defendant Smith is entitled to qualified immunity, and Defendants' motion is due to be granted to that extent.

## B. Physical Injuries

Defendants contend Plaintiff suffered no more than <u>de minimis</u> injuries on March 24, 2019, and, therefore, may recover only nominal damages should he prevail. <u>See</u> Motion at 13-14.

The PLRA provides, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). A "physical injury" is one that is not simply <u>de minimis</u>, though it "need not be significant." <u>Dixon v. Toole</u>, 225 F. App'x 797, 799 (11th Cir. 2007) (per curiam). To satisfy the "physical injury" requirement under the PLRA, a prisoner need not demonstrate a "permanent, long-lasting physical injury" or even one that requires "professional medical attention." <u>Thompson v. Smith</u>, 805 F. App'x 893, 903, 904 (11th Cir. 2020). The PLRA's restriction "was not intended to allow only those prisoner-plaintiffs with severe physical injuries to recover compensatory or punitive damages." <u>Id.</u> at 904.

10

On the day of the incident, a nurse evaluated Plaintiff and documented the following injuries: superficial abrasions on both cheeks, a hematoma on the lip, and redness on the chest from the chemical agents. See Def. Ex. E at 7. Plaintiff's right cheek was swollen, but he had no bleeding. Id. Plaintiff was assessed again the next day, and the nurse noted Plaintiff also had a contusion above his right eye and an abrasion behind his left ear. Id. at 5-6. A nurse completed a head trauma protocol, noting Plaintiff complained of headaches. Id. at 1-2. Plaintiff was provided pain medication. Id. at 2. The nurse also completed a skin protocol for the abrasions to Plaintiff's face. See Def. Ex. D at 13-14. The nurse referred Plaintiff to the doctor to determine whether a prescription was warranted. Id. at 14. The doctor assessed Plaintiff on March 26, 2019, and ordered a skull x-ray. See Def. Ex. F at 4. The x-ray was unremarkable. Id. at 3.

On April 8, 2019, Plaintiff requested a medical appointment because he had pain in his right index finger. See Def. Ex. D at 9. He attributed the pain to the force incident, saying officers stomped on his right hand while he was in handcuffs. Id. A nurse evaluated him on April 10, 2019, provided Ibuprofen for pain, and referred his chart to the doctor for a possible x-ray. Id. at 7. The doctor ordered an x-ray the same day. See Def. Ex. F at 2. The results were normal. Id. at 1.

On this record, the Court is not inclined to conclude as a matter of law that Plaintiff's injuries are <u>de</u> <u>minimis</u> under the PLRA. Plaintiff treated with medical providers on at least four occasions to address his multiple injuries, and the doctor ordered two x-rays. Whether his injuries are compensable under the PLRA will be for a jury to decide.[4]

Accordingly, it is now

**ORDERED:**

1.    Defendants' motion for summary judgment (Doc. 41) is **GRANTED in part** and **DENIED in part**. The motion is **GRANTED** to the extent Defendant Smith is entitled to qualified immunity, and the claims against him are dismissed with prejudice. Judgment to that effect will be withheld pending adjudication of the action as a whole. <u>See</u> Fed. R. Civ. P. 54.

2.    This case is in a posture to proceed to settlement conference and, if settlement negotiations fail, to trial. The Court finds Plaintiff is entitled to the appointment of counsel to assist him. <u>See</u> 28 U.S.C. § 1915(e)(1); <u>Bass v. Perrin</u>, 170 F.3d 1312, 1320 (11th Cir. 1999). Thus, this case is **REFERRED** to the Jacksonville Division Civil Pro Bono Appointment Program so the

---

[4] Even if Plaintiff did not sustain a compensable physical injury under the PLRA, a jury still could award him punitive damages if he makes the appropriate showing. <u>See</u> <u>Hoever v. Marks</u>, 993 F.3d 1353, 1361 (11th Cir. 2021) ("[A] plaintiff – at least one alleging a constitutional violation – need not allege a compensable injury to seek punitive damages, so long as he plausibly alleges that the underlying misconduct was willful or malicious.").

designated deputy clerk of the Court may seek counsel to represent Plaintiff. The Court encourages the parties to attempt to settle the case privately in the meantime. If settlement negotiations are successful, the parties shall immediately notify the Court.

**DONE AND ORDERED** at Jacksonville, Florida, this 6th day of August 2021.

BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Robert James Spears
Counsel of Record